IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS
AUG 1 8 2003
DAVID J. MALAND, CLERK
BY
DEPUTY_____

| | |
|---|---|
| CITY OF PLANO, TEXAS, § § Plaintiff, § § v. § § COMCAST CABLE OF PLANO, INC., § § Defendant. § | Civil Action No. 4:03CV00069 |

## OBJECTIONS TO THE MAGISTRATE JUDGE'S RECOMMENDATIONS AND REPORT

Defendant Comcast Cable of Plano, Inc. ("Comcast"), by its attorneys and pursuant to 28 U.S.C. § 636(b)(1)(C), hereby files its Objections to the Report and Recommendations of United States Magistrate Judge filed August 5, 2003 ("Second Report").

### I. INTRODUCTION

The Magistrate Judge initially correctly concluded that the City's claims for the collection of franchise fees upon revenue derived by Comcast from its delivery of high-speed Internet service over its cable system ("cable modem service") arose under federal law. Report and Recommendation filed June 18, 2003 at 4. The Second Report reversed the Magistrate Judge's initial conclusions. Defendant respectfully submits that, in so doing, the Second Report erroneously applies federal preemption principles and improperly fails to recognize not only that the City's claims raise an important and substantial question of federal law, but also that, as the City itself has acknowledged, federal law is "the heart of the [parties'] dispute." Resp. to Mot. to Dismiss at 5.

The Second Report ostensibly acknowledges that there are generally three circumstances that provide the basis for exceptions to the well-pleaded complaint rule: complete preemption of state law; the existence of substantial questions of federal law; and the practice of artful pleading. Second Report at 3. The Second Report errs, however, in subsequently considering the sole issue in this case to be whether complete preemption exists. Second Report at 4-6.

In this case, each of the three recognized exceptions to the well pleaded complaint rule exist. As discussed below, the viability of Plaintiff's claims depends upon the existence of substantial questions of federal law that Plaintiffs have artfully avoided pleading. In addition, by failing to give sufficient weight to the relevant provisions of the Cable Communications Policy Act of 1984 ("1984 Act"), Congressional intent, and subsequent Federal Communications Commission ("FCC") decisions,, the Second Report incorrectly concludes that complete preemption does not apply. Second Report at 4. Finally, the Second Report acknowledges that three courts have considered the same issue and reached differing results, but it sides with the one wrongly decided case of *City of Rochester et al. v. Time Warner Cable, et. al.*, Cause No. 02-CV-6526 CJS (W.D.N.Y. Apr. 23, 2003) over the better reasoned *City of Chicago v. AT&T Broadband*, 2003 U.S. Dist. LEXIS 6268 (N.D. Ill. Apr. 15, 2003) and *Parish of Jefferson v. Cox. Communications Louisiana, LLC*, Civ. No. 02-3344 (E.D. La., July 3, 2002) cases. The Second Report is inconsistent with the precedent of this Circuit and this Court as well as other persuasive authority, and as such, should be rejected and the City's Motion to Remand denied.

## II. BACKGROUND

In the 1984 Act, Congress amended the federal Communications Act of 1934 to impose a *federal* authorization for, and statutory limit upon, franchising authorities' fees on cable television operators. The 1984 Act adopted a statutory limit of 5% of a cable operator's annual

gross revenue derived "from the operation of the cable system." 47 U.S.C. § 542(b) (revised in 1996). With this limit, Congress sought to prevent local governments from "solving their fiscal problems by assessing large fees and/or taxes against cable operators, an abuse that was widespread prior to the 1972 initiation of federal regulation by the FCC."[1] Congress subsequently overhauled the Communications Act of 1934 with the Telecommunications Act of 1996 ("1996 Act"). In so doing, Congress revised the franchise fee provision of 47 U.S.C. § 542(b), adding the limitation that such fees are capped at 5% of the "gross revenues derived ... from the operation of the cable system *to provide cable service.*" (Emphasis added to denote language added by Congress in the 1996 Act).

After the 1996 Act, as cable operators began to provide high-speed Internet access over cable modems, the FCC began to consider the important national issue of how cable modem service should be regulated. Before the FCC reached a decision, the U.S. Supreme Court and two of the federal Courts of Appeals had occasion to consider disputes implicating the regulatory classification of modem service, and each deferred to the FCC's expertise concerning that classification. *NCTA v. Gulf Power Co,* 534 U.S. 327, 338-339 (2002) ("the FCC ... has not yet categorized Internet service" delivered over cable); *AT&T v. City of Portland,* 216 F.3d 871, 876 (9th Cir. 2000) (rejecting city effort to impose conditions on modem service and observing "at the outset that the FCC has declined, both in its regulatory capacity and as amicus curiae, to address the issue before us."); *MediaOne Group, Inc. v. County of Henrico,* 257 F.3d 356, 365 (9th Cir. 2001) (court was "content to leave these issues to the expertise of the FCC").

---

[1] *See Cable TV Fund 14-A, Ltd. v. City of Naperville,* 1997 U.S. Dist. LEXIS 11511, at *81 n.37 (N.D. Ill. 1997) (citations to legislative history, and quotations thereof, omitted).

**OBJECTIONS TO MAGISTRATE JUDGE'S**
**RECOMMENDATIONS AND REPORT — Page 3**

The FCC released its *Declaratory Ruling* on high-speed Internet access over cable on March 15, 2002, holding "that cable modem service as currently provided is an interstate information service, not a cable service." *See Declaratory Ruling and Notice of Proposed Rulemaking, Inquiry Concerning High-Speed Access to the Internet Over Cable and Other Facilities,*17 F.C.C.R. 4798, 4820 at ¶ 33 (2002)("*Declaratory Ruling*"), *appeal pending, Brand X Internet Servs. v. FCC*, No. 02-70518 (and consolidated cases) (9th Cir., filed Mar. 22, 2002). Recognizing the statutory limits on franchise fees on "cable service" revenue, the Commission observed: "[g]iven that we have found cable modem service to be an information service, ***revenue from cable modem service would not be included in the calculation of gross revenues from which the franchise fee ceiling is determined.***" *Id.* at 4852 ¶ 105 (emphasis added).[2]

Subsequently, cable operators across the country stopped paying franchise fees on modem service revenue. As noted in the Petition, Comcast was paying franchise fees on high speed data service until "[o]n or about March 15, 2002," at which time Comcast notified the City that it would not continue to pay franchise fees on modem service.[3] On March 22, 2002, municipal and county representatives (including the City of Plano) appealed the FCC's *Declaratory Ruling* to the federal Court of Appeals for the Ninth Circuit. *See Brand X Internet Servs. v. FCC*, No. 02-70518 (and consolidated cases) (9th Cir., filed Mar. 22, 2002).[4] Yet, instead of waiting for the cognizant federal court to decide the issue, the City, on February 10,

---

[2] The FCC is expected to more fully address this issue and other regulatory consequences of its decision that high speed data service is an information service in an order to be released sometime this year. *See FCC Declaratory Ruling*, 17 F.C.C.R. 4798 at ¶¶ 72-111.

[3] The FCC noted "until the release of the Commission's declaratory ruling to the contrary, cable operators and local franchising authorities believed in good faith that cable modem service was a 'cable service' for which franchise fees could be collected pursuant to Section 622." *FCC Declaratory Ruling*, 17 F.C.C.R. 4798 at ¶ 107.

[4] *See* Exhibit B attached to the Notice of Removal (Joint Motion to Intervene filed by the City and other local government interests in *Brand X v. FCC*). The City also participated in the regulatory proceeding at the FCC that resulted in the Declaratory Ruling. The Texas Coalition of Cities for Utility Issues, of which the City is a member, submitted comments and reply comments to the FCC as part of that proceeding.

2003, filed its Petition seeking damages in the amount of franchise fees on Comcast's revenue derived from modem service, plus interest and attorney's fees.

## III. ARGUMENT

Defendants may remove "any civil action brought in a State court of which the [federal] district courts ... have jurisdiction." 28 U.S.C. § 1441(a). Federal courts have subject matter jurisdiction over cases *arising under* federal law. 28 U.S.C. § 1331. A case arises under federal law where it raises a substantial federal question and its correct decision depends upon the construction of federal law. The plaintiff, while master of its complaint, may not artfully plead its claims so as to disguise what is at heart a federal question. Section 1441 creates a "broad right of removal" and "the court has no discretion to remand a properly removed federal cause of action unless state law predominates." *Biff-Chapman v. 8th Judicial Juvenile Prob. Bd.*, 22 F. Supp. 2d 583, 585-587 (E.D. Tex. 1998) (Schell, J.).

### A. As This Court's Precedent Establishes, The City's Claims Involve Substantial Federal Questions.

The Second Report, in concluding that the City's petition raises no substantial federal question, is inconsistent with the facts of this case. The City readily concedes that the interpretation of 47 U.S.C. § 542 is at "*the heart of the dispute.*" Resp. to Mot. to Dismiss at 5 (emphasis added). Indeed, each of the City's claims requires that it prove it has a lawful right to receive franchise fees on revenue derived from high-speed data service. As this court's own precedent establishes, removal is appropriate where "the interpretation of the federal statutes ... is a necessary and substantial part of the plaintiff's own cause of action." *Drawhorn v. Qwest Communications Int'l Inc.*, 121 F. Supp. 2d 554, 564 (E.D. Tex. 2000). Under such circumstances, a plaintiff cannot avoid removal because of its "artful pleading" to avoid the substantial federal question.

This Court's *Drawhorn* decision is a particularly instructive application of the artful pleading doctrine. In *Drawhorn*, plaintiffs sought to be class representatives in a state court action of owners of land whose property was subject to easements by utilities. Like the City, the *Drawhorn* plaintiffs asserted causes of action in trespass, unjust enrichment and other state law causes of action. Defendants removed to federal court, and plaintiffs moved to remand. This Court found that plaintiffs' complaint raised substantial federal questions because each cause of action involved interpretation of federal railroad statutes in order to determine whether the railroads were permitted to grant easements under those statutes to the defendant communications companies. In so holding, this Court stated:

> [The] complaint on its face is based on state law. . . .
> Nevertheless, this court's inquiry is not at an end because the Fifth Circuit has held that district courts 'should inspect the complaint carefully to determine whether a federal claim is necessarily presented, even if the plaintiff has couched his pleading exclusively in terms of state law. The reviewing court looks to the substance of the complaint, not the labels used in it.' This process of looking beyond the face of plaintiff's complaints to determine whether a federal question has been raised is called the 'artful pleading' doctrine. The artful pleading doctrine is an exception to the 'well pleaded complaint' rule and it applies when a state law claim involves a ***substantial federal question***. As the Fifth Circuit has explained, the artful pleading doctrine 'does not convert legitimate state claims into federal ones, but rather reveals the suit's necessary federal character.'

*Drawhorn*, 121 F. Supp. 2d at 559-560 (emphasis added)(internal citations omitted).

As in *Drawhorn*, the City has artfully avoided pleading facts that clearly demonstrate its claim actually concerns federal law and the application of the FCC's *Declaratory Ruling*. Properly pled, the City's Petition requires it to demonstrate a legal right to franchise fees on revenue derived from modem service notwithstanding the federal franchise fee limitation and the legal effect of the FCC's *Declaratory Ruling*. For its contract claim, the City must prove that

Comcast "improperly and without authorization" ceased remitting federally limited franchise fees to the City (Petition at 6, ¶ 19) and "wrongfully" refused to pay these fees in breach of its Title VI franchise agreement. Petition at 6, ¶ 21. To prove unjust enrichment, the City must demonstrate that Comcast wrongfully secured a benefit that it would be unconscionable for him to retain. *Barrett v. Ferrell*, 550 S.W.2d 138, 143 (Tex. Civ. App. – Tyler, *writ ref'd.*) (1997). For its trespass claim, the City must demonstrate that Comcast's use of the public rights-of-way constitutes an "unauthorized" physical entry onto City property. Petition at 9, ¶ 33. Title VI of the federal Communications Act, which governs all cable systems and all cable franchises, controls the contract and equitable claims. And the trespass claim requires the City to prove that Comcast's payment of the *lawful* franchise fees does not already compensate the City for the cable system's use of the public right of way.[5] Recognizing that its claims would fail in light of the federal statutory limit on fees for "cable service" revenue and the FCC's ruling that high speed data service is not a "cable service," the City declined to mention the federal issue. Simply because the FCC's *Declaratory Ruling* was brought to the Court's attention first by Comcast does not make it an issue "purely of defense." *Drawhorn*, 121 F. Supp. 2d at 564.[6]

---

[5] *City of Dallas v. FCC*, 118 F.3d 393, 397 (5th Cir. 1997) ("Franchise fees are not a tax, however, but essentially a form of rent: the price paid to rent the public right-of-ways."); *see also Bova v. Cox Communications, Inc.*, Civ. Action No. 7:01CV00090, 2002 U.S. Dist. LEXIS 12481 *6 (W.D. Va. July 10, 2002) ("Section 542(a) grants the franchising authority the right to charge the cable operator a franchise fee for the use of the public rights of way. . ."); *Telesat Cablevision v. City of Rivera Beach*, 773 F. Supp. 383, 406 (S.D. Fla. 1991) (franchise fee compensated the city for "the reasonable rental value of the cable operator's use of the City's rights-of-way.").

[6] The Supreme Court cases relied upon by the City to support its claim that federal law is only raised in this case as a defense are inapposite. They do not involve the Cable Act, franchise fees, the FCC's *Declaratory Ruling*, or a case in which a federal statute authorized the very thing sought in the complaint. In particular, *Merell Dow* is distinguishable because it involved a case involving "the mere incorporation of a federal standard into a state common law cause of action" where Congress had also declined to create a private right of action based on a violation of that federal standard. *Drawhorn*, 121 F. Supp. 2d at 560. In contrast, Section 622 of the Cable Act, 47 U.S.C. § 542, creates a private right of action. *See ACLU v. FCC*, 823 F.2d at 1573 ("courts would have jurisdiction to enforce § 622); *Cable TV Fund 14-A, Ltd. v. City of Naperville*, 1997 U.S. Dist. LEXIS 11511, at *81 (N.D. Ill. July 29, 1997)("[T]he Court concludes that Section 542 provides an implied private right in favor of cable operators"). *Caterpillar* is similarly distinguishable because the Court held that the plaintiffs' complaint "was not substantially dependent upon" a source of federal law. 482 U.S. at 394. Here, the City admits that federal law is at the heart of the parties' dispute. *Oklahoma Tax Commission* is not relevant because, in that case, the court held that

Indeed, this case would not have arisen but for the FCC's issuance of its *Declaratory Ruling* and its finding that *"revenue from cable modem service would not be included in the calculation of gross revenues from which the franchise fee ceiling is determined."* *Id.* at 4852 ¶ 105 (emphasis added). The City's claim for franchise fees on non-"cable service" revenue when it already receives franchise fees on five percent of all Comcast's cable service revenues necessarily depends upon the federal statutory limit in Section 542 on both the type and amount of franchise fees that municipalities may collect and the interpretation of such limits contained in the FCC's *Declaratory Ruling*.

### B. The City Is Attempting To Bypass The Proper Forum For Its Dispute.

The Second Report errs in casting the central issue in the City's Petition as a contractual dispute rather than a challenge to the FCC's *Declaratory Ruling*, which decisively concluded that cable modem service is not a cable service, but is instead an interstate information service, and thus, outside the revenue base subject to permissible franchise fees. Indeed, in the City's Response to [Comcast's] Motion to Dismiss, the City invites this Court to opine that the FCC's ruling – that high speed data service is not a cable service – is wrong. Resp. to Mot. Dismiss at 13. Under 28 U.S.C. § 2342(1), the exclusive forum to challenge the FCC *Declaratory Ruling* is through appeal to the United States Courts of Appeals.[7] The City's Petition attempts to circumvent federal rules applicable to all cable operators and local franchising authorities and to avoid the franchise fee cap that Congress has established and the FCC has interpreted.

---

the suit for Oklahoma state tax liabilities arose under state law. 489 U.S. at 841.

[7] If the Court were to find, as the City has argued, that the FCC did not finally dispose of the franchise fee issue in its *Declaratory Ruling*, then the issue is not a final agency action subject to judicial review. *See NARUC v. FCC*, 727 F.2d 1212, 1219 (D.C. Cir. 1984).

The U.S. District Court for the Northern District of Illinois recognized as much where the City of Chicago similarly attempted to obtain a judgment in state court that its franchise agreement required cable operators to pay franchise fees based on revenue derived from cable modem service. *City of Chicago v. AT&T Broadband*, 2003 U.S. Dist. LEXIS 6268 (N.D. Ill. Apr. 15, 2003). As in this case, the Complaint made no reference to federal law. In denying Chicago's motion to remand, the court agreed that the plaintiff essentially was seeking to obtain a ruling on whether, "in light of the FCC's ruling that cable modem service is not a cable service, the federal limit on franchise fees prohibits the City from collecting franchise fees on cable modem service under the Franchise Agreement." 2003 U.S. Dist. LEXIS 6268 at *6. Plaintiff's attempt to collect revenues on cable modem service in this case, although styled as a series of monetary claims instead of a declaratory judgment, invokes the same issues of federal law. *See also Burda v. M. Ecker Co.*, 954 F.2d 434 (7th Cir. 1992).

In short, this case is not a contractual dispute but rather an attempt by the City to end-run the only legitimate process for appeal of the FCC's decision, and to have a state court override the agency order now before the Ninth Circuit. Remand to state court would result in the very regulatory uncertainty the FCC expressly sought to avoid. *See Declaratory Ruling* at ¶¶ 4-7 (stating goal to ensure consistent national policy of regulatory forbearance for broadband). Given the *national policies* at issue in this case and because the Petition presents a substantial *federal* question, the dispute must remain in federal court.

C. **Complete Preemption Is Not Necessary.**

The City argued, and the Second Report implicitly agrees, that the "artful pleading" exception is limited to cases that involve "complete" federal preemption. However, this Court, and others have found artful pleading where there is no complete preemption. *See, e.g.*

*Drawhorn v. Qwest*, 121 F. Supp. at 566; *see also Cahnmann v. Sprint Corp.*, 961 F. Supp. 1229, 1231 (N.D. Ill. 1997), *aff'd* 133 F.2d 484 (7th Cir.), *cert. denied*, 524 U.S. 952 (1998) (complete preemption is not the "sine qua non of the artful pleading doctrine"); *Marcus v. A.T.&T. Corp.*, 938 F. Supp. 1158, 1165-69 (S.D.N.Y. 1996), *aff'd* 138 F.3d 46 (2nd Cir. 1998) ("Complete preemption is distinct from the artful pleading doctrine, and provides an alternatively sufficient basis for removal."). If the suit's character is "necessarily federal," the case is removable regardless of what is in the pleading. *Drawhorn*, 121 F. Supp. at 560.

### D. Even If Necessary, Complete Preemption Exists In This Case.

Contrary to the Second Report's conclusion, the City's claims are completely preempted. The Second Report identifies three bases for complete preemption: "a statutory creation of a civil enforcement section granting a cause of action; a specific jurisdictional grant to federal district courts; or a manifestation of Congressional intent that state claim be completely preempted." Second Report at 5 (citing *Aaron v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*, 876 F.3d 1157 (5th Cir. 1989). The Second Report, however, does not identify all the applicable bases for preemption.

In this case, the FCC's *Declaratory Ruling* operates in conjunction with the statutory provisions governing the limits on cable franchise fees to completely preempt claims like the City's. The Supremacy Clause requires that "[w]hen the Federal Government acts within the authority it possesses under the Constitution, it is empowered to preempt state laws to the extent it is believed that such action is necessary to achieve its purposes." *City of New York v. FCC*, 486 U.S. 57, 63 (1988). Preemption occurs when Congress, in enacting a federal statute, expresses a clear intent to preempt state law, *see Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 368 (1986), whether explicitly or implicitly through the statute's structure or purpose.

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152-153 (1982) (internal quotations and citations omitted). Preemption also may occur through a federal agency's promulgation of regulations. *See id.* at 153; *Louisiana Pub. Serv. Comm'n*, 476 U.S. at 369.

While the Second Report correctly notes that "federal regulations and statutes do not *necessarily* confer federal question jurisdiction," (Second Report at 5) (emphasis added), certain claims relating to franchise fees are completely preempted. Congress and the FCC intended to fully preempt state-based franchise fee claims when they rise to a level of national significance and when "inconsistent judicial interpretations threaten to undo the uniformity Congress sought to achieve in establishing a federal standard for franchise fees." *ACLU v. FCC*, 823 F.2d 1554, 1574 (D.C. Circuit 1987), *cert. denied*, 485 U.S. 959 (1988)..[8] Whether franchise authorities may impose franchise fees on high speed data service is exactly such a question of national importance, as evidenced by the FCC's *Declaratory Ruling* on the matter, as well as the appeal of that ruling placing the precise issue in this case squarely before the federal Court of Appeals for the Ninth Circuit. Given the national policies at issue in this case, the dispute is completely preempted and must remain in federal court.

The Second Report errs in finding that preemption is not possible because the parties' agreement does not reference federal law and because the agreement has a provision concerning a potential (but non-existent) request for waiver from the FCC for fees in the agreement. This

---

[8] After the 1984 Cable Act was passed, the FCC adopted a partial forbearance policy for regulating franchise fees. The FCC's policy recognizes that some franchise fee disputes rise to the level of national importance and others do not. *Cable Communications Policy Act of 1984*, Memorandum Opinion and Order, 104 F.C.C.2d 386 (June 5, 1986) at ¶ 19 ("the Commission will entertain fee disputes concerning matters that arise directly under specific provisions of the Cable Act and that may call upon the expertise of the Commission for their interpretation"). As the D.C. Circuit explained in upholding the FCC's partial forbearance policy, "the ultimate responsibility for ensuring a 'national policy' with respect to franchise fees lies with the federal agency responsible for administering the Communications Act. . . the FCC necessarily enjoys discretion in setting its enforcement priorities and identifying those franchise fee disputes that require Commission action." ACLU v. FCC, 823 F.2d at 1574.

reasoning is incorrect because Section 622 of the Communications Act, 47 U.S.C. § 542, limits franchise fees that a franchising authority may collect regardless of whether the parties' agreement references federal law. Similarly, Comcast cannot obtain a waiver for something that is unlawful. *See Cable TV Fund 14-A*, 1997 U.S. Dist. LEXIS 11511, at *86 ("the five percent cap on franchise fees provided in § 542(b) of the Cable Act may not be waived"). More generally, the preemption provision of the Cable Act, 47 U.S.C. § 556(c), states broadly that "any provision of any franchise granted by such [franchising] authority which is inconsistent with [the Cable Act] shall be deemed to be preempted and superceded."

The complete preemption of state contract claims for franchise fees on cable modem service is supported by another case involving the same issues. In *Parish of Jefferson v. Cox Communications Louisiana*, 2003 WL 21634440 (E.D. La., July 3, 2002), the United States District Court for the Eastern District of Louisiana dismissed a breach of contract claim filed by a local government against a cable operator who, like Comcast, ceased paying franchise fees under its cable franchise after the FCC released its *Declaratory Ruling*. The court, relying in part on 47 U.S.C. § 556(c) concluded that "[i]t is clear that ***under federal law***, state law, and the Agreement itself, ***the Cable Act preempts state law in this case in the event of a conflict.***" *Parish of Jefferson v. Cox Communications Louisiana*, 2003 WL 21634440 at *4 (emphasis added). The court went on to analyze the preemptive force of federal law, including the FCC's decision that, effective on March 15, 2002, cable modem services are not cable services under federal law, and therefore "revenue from cable modem service would not be included in the

characterizes its claims under state law, the federal statute "provides the authority" for any claim the City has to "franchise fees from cable operators." The first subsection of 47 U.S.C. § 542 authorizes the fees, subsection (b) defines the limit on those fees, and the remaining subsections fill out the regulatory scheme.[10] Thus, contrary to Plaintiff's contention that it could not bring its claim for the collection of franchise fees on cable modem service in federal court, Pls. Objections, 3, 6, federal law must be the basis for such claims, and defines the limits of those claims.[11]

It appears that what prompted the reversal of the Magistrate Judge's earlier determination that removal is appropriate is the United States District Court for the Western District of New York's decision in *City of Rochester, et al. v. Time Warner Cable, et. al.* However, the Rochester decision is not binding on this court,[12] and in any event is incorrect.

First, the decision rests on a mistake of law. The *Rochester* Court wrongly concluded that "the federal statute limits the franchise fees, but does not authorize it." *Id.* at 7. As mentioned above, this holding contradicts the express language of the statute itself, which declares that "any cable operator may be required . . . to pay a franchise fee," and the unequivocal legislative history of this provision, which explains that "Section 622 [47 U.S.C. § 542] provides the authority for a franchising authority to collect franchise fees from cable operators." Cable Franchise Policy and Communications Act of 1984, H.R. Rep. No. 98-934 at

---

[10] Although inartfully worded, Subsection (d) acknowledges that "court actions" would arise under this statute. *See ACLU v. FCC*, 823 F.2d at 1575 n.41 ("actions to enforce the franchise fee provision are maintainable in either federal or state courts. ... The FCC's policy will be drawn into serious question if this assumption should prove erroneous.").

[11] The City argues that the only areas of law for which this doctrine applies are those already decided by the Supreme Court. Objections at 7 n.6. The Supreme Court has never uttered such a bright-line concept, but rather, as demonstrated in *Beneficial National Bank*, the Court considers each matter on its merits.

[12] *See, e.g., Northwest Forest Resource Council v. Dombeck*, 107 F.3d 897, 900 (D.C. Cir. 1997) (Stare decisis does not mandate that district court follow decision of district court in another circuit).

## IV. CONCLUSION

For the foregoing reasons, Comcast respectfully requests that this Court set aside the Second Report, deny the City's Motion to Remand, and retain jurisdiction over the Complaint.

Respectfully submitted,

_____
ELIZANN CARROLL
Attorney-in-Charge
State Bar No. 00787209
THOMPSON & KNIGHT L.L.P.
1700 Pacific Avenue, Suite 3000
Dallas, Texas 75201
(214) 969-1700
(214) 969-1751 (facsimile)
Elizann.Carroll@tklaw.com

ATTORNEYS FOR DEFENDANT
COMCAST CABLE OF PLANO, INC.

*Of counsel:*
Robert G. Scott, Jr.
Maria T. Browne
Cole, Raywid & Braverman, L.L.P.
1919 Pennsylvania Avenue, N.W.
Suite 200
Washington, DC 20006
(202) 659-9750
(202) 241-0067 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was served upon all counsel of record pursuant to the Federal Rules of Civil Procedure on this the /5th day of August, 2003.

_____
Elizann Carroll